IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZENITH ELECTRONICS LLC, <br><br> Plaintiff, <br><br> v. <br><br> SONY CORPORATION, SONY CORPORATION OF AMERICA, and SONY ELECTRONICS, INC., <br><br> Defendants. | No. C 11-02439 WHA <br><br> **ORDER PARTIALLY GRANTING DEFENDANTS' MOTION TO STAY AND VACATING HEARING, AND REFERRAL OF ALL DISCOVERY DISPUTES TO MAGISTRATE JUDGE** |

## INTRODUCTION

In this patent infringement action, defendants move to stay the action pending the resolution of an investigation by the United States International Trade Commission, which was initiated by plaintiff and concerns three of the ten patents at issue here. For the following reasons, defendants' motion is **PARTIALLY GRANTED**.

## STATEMENT

When the Federal Communications Commission began the process of converting American television broadcasting from analog to digital, it adopted a protocol that the new system would use. The Advanced Television Systems Committee developed the ATSC Standard, which the FCC now mandates all American television broadcasts use. To receive ATSC Standard-compliant broadcasts, a television must incorporate a number of patented technologies. Ten of the patents belong to plaintiff Zenith Electronics LLC.

All manufacturers who wish to build ATSC Standard-compliant devices must, it seems, therefore obtain a license to patents belonging to Zenith and others. Defendant Sony Corporation and related entities had been manufacturing ATSC Standard-compliant high-definition televisions and other devices through March 2009, allegedly without such license for some period of time. Plaintiff attempted to negotiate a license with defendants at that time, but they did not reach an agreement (Amd. Compl. ¶¶ 10–11, 13).

Plaintiff filed this action in the United States District Court for the Eastern District of Texas in October 2010, alleging that defendants infringed ten of plaintiff's patents related to high-definition television technologies. The action was transferred to this district in April 2011. Four days later, Zenith filed a complaint with the United States International Trade Commission, alleging that defendants infringed three of the ten patents asserted in district court and seeking to block importation of accused products. The ITC commenced an investigation into plaintiff's allegations on June 6, 2011.

Defendants filed the instant motion on June 30, 2011. Defendants move to stay the entire action on the grounds that (1) 28 U.S.C. 1659(a) compels a stay of proceedings with respect to the three patents at issue in the ITC action, and (2) the issues, defenses, and discovery that will be at issue in the ITC action "significantly overlap" with those at issue in the instant action such that the Court should exercise its discretion to stay litigation of the seven non-overlapping patents until the ITC action is concluded (Mot. 2).

**ANALYSIS**

**1.   THE OVERLAPPING PATENTS.**

Under 28 U.S.C. 1659(a),

> [i]n a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within–

2

|  |  |
|---|---|
| (1) | 30 days after the party is named as a respondent in the proceeding before the Commission, or |
| (2) | 30 days after the district court action is filed, |

whichever is later.

The ITC commenced its investigation of plaintiff's allegations of infringement of the overlapping patents on June 6, 2011, naming defendants as respondents to the proceeding. Defendants requested a stay of this district court action 24 days later. The patents at issue in the ITC proceeding are United States patent numbers 5,598,220; 5,629,958; and 5,636,251. Defendants' alleged infringement of those patents is being litigated in the instant action (Amd. Compl. ¶¶ 21, 33, 39).

Defendants have met the statutory requirements for a stay with respect to the overlapping patents because they are respondents in the ITC action, they alleged infringement of the same three patents being litigated before the ITC, and their request was timely filed. *See In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007). Plaintiff does not oppose defendants' request to stay litigation of the three overlapping patents (Opp. 8). Defendants' motion to stay all proceedings with respect to the '220, '958, and '251 patents in the instant action until the ITC action is resolved is therefore **GRANTED**. Discovery regarding these patents, however, may go forward as described below.

### 2. THE NON-OVERLAPPING PATENTS.

The party seeking a discretionary stay bears the burden of proving that a stay is warranted. The district court's discretion to grant a stay has limits: "[i]f there is even a fair possibility that the stay . . . will work damage to some one else," the stay may not be warranted absent a showing by the moving party of "hardship or inequity." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Our court of appeals has stated that simply "being required to defend a suit does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (internal quotation marks omitted).

Congress explicitly intended that district courts should consider using their discretionary power to stay patent infringement litigation that is related to, but not duplicative of, an action

3

before the ITC. *See* H.R. REP. NO. 103-826(I), at 141 (stating that after granting mandatory stay under Section 1659(a), "[t]he district court may use its discretionary authority to stay any other claims in the action before it"). When deciding whether to exercise its discretion to order a stay, a district court should consider and balance three nonexclusive factors: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110.[*] "[I]ndependent proceedings which bear upon the case" need not have preclusive effect for a stay to be granted. The delay imposed by a stay must also be considered: "[a] stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

### A.     Possible Harm from Granting a Stay.

Granting a stay may result in harm to plaintiff due to the timing of the actions. The ITC issued its procedural scheduling order in early July 2011, setting a target date of August 6, 2012, for its final determination (Mack Decl. Exh. H at 2). Plaintiff estimates that, following the final ITC determination, one or more parties will appeal the decision to the Court of Appeals for the Federal Circuit, and the appeal will not be resolved until August 2013. Plaintiff then estimates that on a potential remand to the ITC, two more years will pass, delaying final resolution of the ITC action until August 2015 (Opp. 8–9). Once the ITC action ends, a stay ordered here could be lifted, pushing final resolution of all ten allegations of infringement even further into the future. This order finds plaintiff's estimates to be speculative but reasonable.

Plaintiff's claims have some supposed urgency. All but one of the seven non-overlapping patents will have expired by August 2015 (Opp. 9). Delaying judgment in this action until after

---

[*] When ruling on a motion for a discretionary stay in a patent case, a district court applies the law of its court of appeals. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) (applying law of regional court of appeals to issue that is not unique to and does not go directly to outcome of patent litigation).

4

the patents' expiration eliminates the possibility of injunctive relief, if it is available at all. Timing considerations therefore weigh against staying the instant action with respect to the seven non-overlapping patents. Furthermore, evidence may be lost and the difficulty in deposing defendants' employees may be compounded if they leave their employer before the stay is lifted.

This order recognizes, however, that plaintiff waited eighteen months after it was unable to reach a licensing agreement with defendants to file this action and the ITC action. Plaintiff is not without fault in creating its timing problems.

### B.  Possible Hardship for Defendants without a Stay.

Defendants may have to do more work sooner if they are forced to fight a two-front war, simultaneously defending this action encompassing all ten patents, and the ITC action encompassing three of them. But eventually all of the work will have to be done. Big law firms can handle the sooner volume. This is a small factor.

### C.  Judicial Economy.

The final factor asks whether a stay will simplify or complicate issues, proof, and questions of law. The ITC action may indeed narrow the issues in this action, but any findings by the ITC are not binding here and may be given any weight, or no weight at all. *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996). There is no way to know whether the ITC action will complicate or simplify anything until the ITC results issue forth and the undersigned determines what weight, if any, to give them. As mentioned above, some duplicative discovery could occur without a stay, and the Court must take part in that to some degree. However, because the results of the ITC action are not preclusive as to anything in this action, this factor only slightly favors a stay.

\*          \*          \*

To the Court, the most practical and fairest plan is to allow discovery to go forward as to all ten patents and to deem all discovery usable in both forums. This will avoid the inevitable dodge in civil litigation that a discovery request pertains to some stayed aspect of the case and therefore should be denied. On the other hand, all motion practice, proceedings, trial planning,

5

and compliance with the local patent rule disclosure requirements will be stayed in this action pending resolution of the ITC action. Relief from this stay may be sought as follows.

With respect to the non-overlapping patents, and except for discovery disputes, no motions may be filed in this action without prior written approval. A party seeking approval to file a motion must file a précis that summarizes the essence of the motion and explains its urgency. Any party opposing approval to file based on the précis may file an opposition by noon on the second business day following the day on which the précis was filed. Both the précis and the opposition must be five double-spaced pages or shorter and may not contain footnotes or attachments. After considering the précis and the opposition (if any), the Court will either grant or deny leave to file the motion. If leave is granted, a briefing schedule and hearing date will be set. With respect to the patents at issue in the ITC action, no motions may be filed in this action until the conclusion of the ITC action, except for discovery disputes.

All discovery supervision and discovery disputes are hereby referred to the Clerk for random assignment to a magistrate judge. The parties are expected to raise discovery disputes with the magistrate judge in a timely fashion in order that this action will be ready to proceed at the conclusion of the ITC action.

## CONCLUSION

Defendants' motion to stay is **GRANTED IN PART**. The hearing set for August 4, 2011, is **VACATED**.

**IT IS SO ORDERED.**

Dated: July 22, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE